IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Criminal No. 1:19-CR-129 |
| v. | ) | |
| | ) | Hon. T.S. Ellis, III |
| MARLON EDGARDO HUEZO RIVERA, | ) | |
| | ) | Sentencing:  November 22, 2019 |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), hereby submits this position paper with respect to the sentencing of the defendant, MARLON HUEZO RIVERA.  The United States has reviewed the Presentence Investigation Report ("PSR") and agrees with the findings of the Probation Office, which indicates that the defendant's Guidelines range is 41 to 51 months' incarceration (based on a total offense level of 22 and a criminal history category of I).  For the reasons set forth below, the government respectfully recommends a sentence of 41–44 months' incarceration.

**Background and Procedural History**

The victim in this case, F.C.H., exchanged several text messages with a female friend, Fuentes Fuentes, who was acquainted with the Silvas Locos Salvatrucha ("SLS") clique of La Mara Salvatrucha, also known as "MS-13," a violent international street gang.  PSR ¶¶ 13−14, 17. These text messages referenced contact with the police about SLS's criminal activities.  *Id.* at ¶ 17.  Subsequently, Fuentes Fuentes showed these text messages to members or associates of the SLS clique, who discussed their concerns that F.C.H. was a snitch.  *Id.*; *United States v. Barrera*

*Barrera,* 1:19-cr-129, Docket Entry ("DE") 37 ¶ 5; *United States v. Martinez Melendez,* 1:19-cr-129, DE 50 ¶ 5; *United States v. Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 5. Aside from believing F.C.H. was a snitch, co-defendant and Second Word of the SLS clique Jose Ochoa Del-Cid ("Ochoa Del-Cid") also believed that F.C.H. was falsely claiming to be a member of MS-13, and that he was otherwise criticizing the conduct of SLS gang members in the area as cowardly. PSR ¶ 17; Ochoa Del-Cid, 1:19-cr-88, DE 31 ¶¶ 1, 6. In response to these purported violations of the MS-13 gang's rules, Ochoa Del-Cid advised members of the SLS clique that F.C.H. would receive a beating. *Id.* Ochoa Del-Cid also coordinated with Marlon HUEZO RIVERA ("HUEZO RIVERA" or "the defendant"), a member of the Chilangueras clique of MS-13, to participate in the victim's assault. The defendant agreed to participate in the victim's beating even though neither the defendant nor his clique had any specific purported issue with the victim.

On the evening of October 20, 2018, believing he was going to hang out and smoke marijuana together with friends, F.C.H. agreed to meet several associates of the MS-13 gang at the James Lee Community Center Park, in Falls Church, Virginia. PSR ¶ 18. While other associates of the SLS clique and members and associates of the Hempstead clique of MS-13 were at the park with the victim, at approximately 7:20 p.m., the defendant communicated with Ochoa Del-Cid to inform him that F.C.H. was already at the park, and that he would pick up Ochoa Del-Cid and co-defendant Denis Oklides Martinez Melendez ("Martinez Melendez") so they could head to the park together. *Id.*; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 6; Exh. 1 at 1–3. Shortly thereafter, co-defendant Kevin Barrera Barrera ("Barrera Barrera") informed the defendant via Facebook Messenger that F.C.H. would try to escape from the park if the defendant and Ochoa Del-Cid took much longer to arrive, and the defendant responded by telling Barrera Barrera to ensure that the victim did not leave the park. PSR ¶ 18; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 7; Exh. 2 at 4. The

defendant then spoke on the phone with Barrera Barrera for approximately two minutes. *Id.* The defendant later picked up Martinez Melendez and then picked up Ochoa Del-Cid, and the three drove together to the James Lee Park for the specific purpose of ambushing and assaulting F.C.H. PSR ¶ 19; Exh. 1 at 3.

Once the defendant, Ochoa Del-Cid and Martinez Melendez arrived at the park, Ochoa Del-Cid instructed Martinez Melendez to guard F.C.H. while Ochoa Del-Cid separately conducted a gang meeting with the other members and associates of MS-13 present, some of whom were holding bats and some of whom were wearing masks. *See* PSR ¶ 19; *United States v. Jose Ochoa Del-Cid,* 1:19-cr-88, DE 31 ¶¶ 6−7; *Barrera Barrera,* 1:19-cr-129, DE 37 ¶¶ 7−8; *Martinez Melendez,* 1:19-cr-129, DE 50 ¶¶ 7−8; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶¶ 7−8. Ochoa Del-Cid explained to the group during the meeting that they were going to assault F.C.H. in successive waves of three for violating the gang's rules. *See* PSR ¶ 19; *Ochoa Del-Cid,* 1:19-cr-88, DE 31 ¶¶ 6−7; *Barrera Barrera,* 1:19-cr-129, DE 37 ¶ 8. Ochoa Del-Cid then instructed Martinez Melendez to bring F.C.H. back over to the assembled group and told F.C.H. that he could not leave and was going to be beat for violating the gang's rules. *See* PSR ¶ 19; *Ochoa Del-Cid,* 1:19-cr-88, DE 31 ¶ 8; *Barrera Barrera,* 1:19-cr-129, DE 37 ¶ 9; *Martinez Melendez,* 1:19-cr-129, DE 50 ¶ 9; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 10. Then, Ochoa Del-Cid and Barrera Barrera confronted F.C.H. about his text messages with Fuentes Fuentes, calling F.C.H. a snitch, producing screenshots of the text messages, and stating that F.C.H. was going to pay for snitching. *See* PSR ¶ 19; *Barrera Barrera,* 1:19-cr-129, DE 37 ¶ 9; *Martinez Melendez,* 1:19-cr-129, DE 50 ¶ 9; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 10. Ochoa Del-Cid told F.C.H. that he needed to take the beating and, if he ran, they would kill him. PSR ¶ 19. Ochoa Del-Cid then instructed the assembled group of gang members and associates, including the defendant, to assault F.C.H. *See id.*; *Ochoa Del-Cid,* 1:19-

cr-88, DE 31 ¶ 8. The gang then brutally assaulted F.C.H. for approximately three minutes using multiple bats, and punching and kicking him. *See* PSR ¶ 19; *Ochoa Del-Cid,* 1:19-cr-88, DE 31 ¶ 8; *Barrera Barrera,* 1:19-cr-129, DE 37 ¶ 10; *Martinez Melendez,* 1:19-cr-129, DE 50 ¶ 10; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 11.

Because of the assault, F.C.H. suffered severe injuries and underwent multiple surgeries, including a broken left arm that was left facing the wrong way, a broken right elbow, and a broken left finger. *See* Exh. 3 at 2 (photo showing the victim lying in a hospital bed, his arms wrapped in casts and multiple bandages); Exh. 4 (photos depicting victim's injuries); PSR ¶¶ 19, 45; *Ochoa Del-Cid,* 1:19-cr-88, DE 31 ¶ 8; *Barrera Barrera,* 1:19-cr-129, DE 37 ¶ 10; *Martinez Melendez,* 1:19-cr-129, DE 50 ¶ 10; *Huezo Rivera*, 1:19-cr-129, DE 88 ¶ 11. F.C.H. remained in the hospital until October 23, 2018 and was left with unpaid medical bills totaling $71,974.25. PSR ¶¶ 45−46.

On April 18, 2019, the defendant was charged in a two-count Indictment with conspiracy to commit assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6) (Count 1), and assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and (2) (Count 2). PSR ¶ 1. On June 27, 2019, the defendant was arrested pursuant to a federal arrest warrant in the instant case. *Id.* On August 29, 2019, pursuant to a plea agreement, the defendant pled guilty to Count 2 of the Indictment. *Id.* ¶ 4.

## ARGUMENT

**I. Sentencing Law**

In addition to properly calculating the applicable Guidelines range, this Court is also required to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines advisory, emphasizing that a sentencing court must not only consider the Guidelines, but also the sentencing

factors set forth in 18 U.S.C. § 3553(a).  *Id.* at 264.  The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence."  *Id.* at 90.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should first calculate the Sentencing Guidelines range, then permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the Section 3553(a) factors, and finally pronounce a sentence based on the relevant factors.  *Id.* at 49−50.  Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct."  Ultimately, the sentence imposed by the court must meet a standard of reasonableness.  *See Booker*, 543 U.S. at 260−61.

**II.     Sentencing Guidelines Calculation**

As the PSR correctly calculates, the defendant's total offense level is 22.  The base offense level for the defendant's crime is 14.  U.S.S.G. § 2A2.2(a).  Because the assault involved more than minimal planning, a 2-level increase is appropriate.  *Id*. § 2A2.2(b)(1).  The use of a dangerous weapon during the assault warrants a 4-level increase.  *Id.* § 2A2.2(b)(2)(B).  The defendant's base level offense is increased by 5 points because the offense resulted in serious bodily injury.  *Id.* § 2A2.2(b)(3)(B).  The defendant has demonstrated acceptance of responsibility for his offense, warranting a two-level decrease.  *Id.* § 3E1.1(a). Because the defendant has assisted the United States in the investigation and prosecution of his own misconduct by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for

trial and permitting the government and the Court to allocate their resources efficiently, the United States respectfully moves for an additional one-level decrease in the defendant's offense level. *See id.* § 3E1.1(b).

**III.   A Sentence of 41–44 Months' Incarceration Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a) and (b).**

Section 3553(a) requires a sentencing court to consider "the nature and circumstances of the offense and the characteristics of the defendant," as well as the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)–(C). The sentencing court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Applying these sentencing factors to the facts of this case demonstrates that a sentence of 41−44 months' incarceration is appropriate and reasonable.

   a.   <u>Nature and Circumstances of the Offense</u>

The defendant participated in a violent assault whose reasons were as senseless as the brutality of the offense itself: to instill fear in those who would dare cross or slight the MS-13 gang. Indeed, the defendant was not a passive participant, he was essential to carrying out the assault successfully. It was the defendant who was in constant communication with Barrera Barrera on the night of the assault about making sure the victim did not escape from the park, and with Ochoa Del-Cid, the Second Word of the SLS clique, about traveling to the park together. *See* Exhs. 1, 2. As demonstrated in Facebook Messenger communications, between approximately 6:45 p.m. and approximately 8:15 p.m., the defendant and Barrera Barrera called each other six times. *See* Exh. 2 at 1. At about 8:24 p.m., Barrera Barrera messaged the defendant, telling him

6

to get to the park because the victim was trying to escape. *Id.* at 3–4. The defendant responded by instructing Barrera Barrera to ensure that the victim did not get away. *Id.* at 4. Furthermore, it was the defendant who informed Ochoa Del-Cid that the victim was already at the park with other individuals, and that he would pick up Ochoa Del Cid and "Denis" (Martinez Melendez) to go to the park. *See* Exh. 1 at 1–3.

At about 9:00 p.m., the defendant picked up Ochoa Del-Cid and Martinez Melendez in his car and drove to the James Lee Park. The defendant arrived at the park that evening knowing full well that the three of them, along with others, intended to beat F.C.H. for perceived affronts to the MS-13 gang. The lengthy and brutal assault, which the defendant actively participated in, involved bats, punching, and kicking, and ended with the victim lying defenseless on the ground with one of his arms broken and facing entirely the wrong way.

As a result of the assault, the victim was hospitalized for days and had to undergo multiple surgeries that leave him in pain to this day. *See* Exh. 4. The actions of the defendant and the other MS-13 gang members or associates who beat the victim on October 20, 2018, continue to reverberate with the victim and his family to this day. *See* Exh. 5. As the victim explained in his letter to the Court, he cannot sleep because he is afraid that the defendant and other individuals who assaulted him that day will kill him, and he now lives his life looking over his shoulder. *Id.*

The defendant's participation in the victim's senseless assault was to serve MS-13's warped code of violence and to enforce the gang's rules, and it demonstrates his contempt for the law and his total disregard for the safety of the people who make up this community. Indeed, the defendant did not know the victim, and his clique had no involvement with the victim, yet the defendant still engaged in this senseless crime to serve MS-13's overarching mission of instilling fear through violence. A sentence of 41–44 months' incarceration will serve the necessary purpose

of protecting the public from the defendant, while also helping to deter other MS-13 gang members by impressing upon them the severe consequences of such criminal conduct. Equally as important, a sentence of 41–44 months' incarceration will achieve some measure of justice for the victim and his family, who have all suffered the awful consequences of the gang's violent ideology and practice.

      b. History and Characteristics of the Defendant

The defendant has a long history of membership and association with the MS-13 gang, which he has repeatedly demonstrated in several different ways. For example, in Facebook communications with others, he referred to himself by his MS-13 moniker, "Oscuro," and identified himself as being a "chequeo" belonging to the Chilangueras clique. *See* Exhs. 6, 7, and 8. In addition, Barrera Barrera posted a picture on Facebook of the defendant flashing "la garra" (translation: "the claw"), a well-known MS-13 gang sign meant to depict the devil's horns, next to an associate who is also seen flashing an MS-13 gang sign. *See* Exh. 9. The defendant also posted photos on Facebook of Nike Cortez shoes, which are typically associated with MS-13 membership. *See* Exhs. 10, 11.

In addition to the assault of F.C.H., in furtherance of his membership and association in MS-13, the defendant has committed acts of violence on behalf of the gang. In 2017, the defendant and co-defendants Ochoa Del-Cid and Martinez Melendez were active participants in a gang-related fight between members and associates of MS-13 and members and associates of the 18th Street Gang at a restaurant in Falls Church, Virginia. *See* Exh. 12. Following the fight, Martinez Melendez shared a video of the fight on Facebook with an associate, bragging: "Look dog the mess we made yesterday where we toppled the Chavalas (translation: 'rival gang members')." *See* Exh. 13. At the six-second mark of the video, the camera zooms in on the defendant's face. *See* Exh.

12. The video proceeds to show a number of individuals throwing chairs and dishes at each other and fighting with each other. *Id.*

Furthermore, the defendant has pending abduction and murder charges in Prince William County, PSR ¶ 73, stemming from his alleged participation with other members of the Chilangueras clique in the murder of an 18 year old in August 2017. This murder was committed just over one year before the victim's assault in this case and speaks to the defendant's violent tendencies and associations.

Along with committing acts of violence on behalf of MS-13, the defendant also engaged in drug distribution on behalf of the gang. During the course of this investigation, local law enforcement recovered several notebooks from the defendant's and Ochoa Del-Cid's homes that documented various drug transactions. A notebook belonging to Ochoa Del-Cid contained the label "cuentas pendiente" (translation: "pending bills") above dollar amounts assigned to various names and writing that is indicative of drug transactions. *See* Exh. 14. Visible in Exhibit 14 is the name "Marlon," which is the defendant's first name. *See id.* Furthermore, a notebook belonging to the defendant contained the label "pendientes del mes" (translation: "pending for the month") above amounts assigned to various names and writing that is indicative of drug transactions. *See* Exh. 15. Visible in Exhibit 15 is the name "Oscuro," which is the defendant's gang moniker. The defendant also coordinated drug purchases with fellow gang members through Facebook Messenger. *See* Exhs. 16, 17, and 18. For example, on October 24, 2018, the defendant sent a message from his Facebook account ("LinAdaMs") to Ochoa Del-Cid's Facebook account stating, "Sell me a weed bag," and discussing money amounts that the defendant owed Ochoa Del-Cid from drug sales. *See* Exh. 16. In addition, on August 20, 2018, the defendant sent a voice message through Facebook to an associate stating, "So then—what's up?—did you want the weed bag? . .

. because that thing . . . belongs to the clique. . . . You also have one there pending that's listed in the book." Exh. 17. The next day, August 21, 2018, the defendant sent another voice message to the same associate stating, "I already smoked my own weed. The one I have is the one that belongs to the clique." *See* Ex. 18.

The defendant's membership in MS-13 and his criminal conduct in support of the gang, including his participation in violent offenses and drug distribution, have repeatedly demonstrated a disregard for the laws of this country. A substantial sentence of incarceration is appropriate here.

## Conclusion

For the above-stated reasons, the United States submits that a sentence of 41−44 months' incarceration is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). As such, the United States respectfully recommends that the Court impose a sentence of 41−44 months' incarceration.

                Respectfully submitted,

                G. Zachary Terwilliger
                United States Attorney

By:     /s/
          _____
          Cristina C. Stam
          Nicholas U. Murphy II
          Assistant United States Attorneys
          United States Attorney's Office
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          (703) 299-3700

## **CERTIFICATE OF SERVICE**

I certify that on November 15, 2019, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

In addition, I certify that on November 15, 2019, I emailed a copy of the foregoing to the U.S. Probation Officer assigned to this matter:

Kenneth G. Orsino
U.S. Probation Officer
Eastern District of Virginia
8809 Sudley Road, Suite 200
Manassas, VA 20110
Kenneth_Orsino@vaep.uscourts.gov

/s/
_____
Cristina C. Stam
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
cristina.stam@usdoj.gov